1 | SCOTT A. KRONLAND (SBN 171693)
2 | JEFFREY B. DEMAIN (SBN 126715)
  | REBECCA MORYL LEE (SBN 305119)
3 | Altshuler Berzon LLP
4 | 177 Post Street, Suite 300
  | San Francisco, CA 94108
5 | Telephone: (415) 421-7151
6 | Facsimile: (415) 362-8064
  | E-mail:  jdemain@altber.com
7 |          skronland@altber.com
           rlee@altber.com
8 |
9 | Attorneys for the Union Defendants

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA

12 |

13 | MICHAEL MARTIN, *et al.*,

14 |          Plaintiffs,

15 |     v.

16 | CALIFORNIA TEACHERS
17 | ASSOCIATION, *et al.*,

18 |          Defendants.

CASE NO.:  2:18-cv-08999-JLS-DFM

**UNION DEFENDANTS'
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS FIRST
AMENDED COMPLAINT**

Hearing Date:  January 25, 2019
Hearing Time: 10:30 a.m.
Location: Courtroom 10A

Judge:  The Hon. Josephine L. Staton

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................i

TABLE OF AUTHORITIES ...........................................................................iii

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................. 1

LEGAL STANDARDS ................................................................................... 3

ARGUMENT .................................................................................................. 5

  I.    Plaintiffs' Claim Regarding Membership Dues (Claim 1) Should Be Dismissed. .............................................................................................. 5

     A.    Plaintiffs' Claim for Prospective Relief Against the Collection of Fair-Share Fees from Non-Members Does Not Present a Live Controversy. ......................................................................... 6

     B.    Plaintiffs Are Not Entitled to Retrospective Relief for Having Paid Union Membership Dues. ................................................... 8

        1.    Plaintiffs' payment of membership dues was voluntary, so the entire premise of Plaintiffs' claim is erroneous. .................................. 8

        2.    The Unions are not liable for retrospective relief under §1983 because they acted in good faith in collecting fair-share fees. ............ 11

     C.    Plaintiffs Fail to Allege Sufficient Facts to State a Misrepresentation Claim. .................................................... 20

  II.   Plaintiffs' Challenge to CTA's Voluntary Contribution (Claim 2) Should Be Dismissed Insofar as Plaintiffs Seek Prospective Relief. .............. 21

  III.  Plaintiffs' Challenges to California Government Code §3558 (Claim 3) Should Be Dismissed. ................................................................ 22

     A.    Plaintiffs Lack Standing to Challenge §3558. ............................ 23

     B.    Section 3558 Does Not Violate the First Amendment .............................. 25

     C.    Section 3558 Does Not Violate Plaintiffs' Privacy Rights ...................... 29

  IV.  Martin's Challenge to California Government Code §45060 (Claim 4) Should Be Dismissed For Lack of Standing .................................... 30

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

V.    Martin's Challenge to California's System of Exclusive Representative Collective Bargaining (Claim 5) Should Be Dismissed .................................. 31

VI.   Martin's Federal Antitrust Claim (Claim 6) Should Be Dismissed. .............. 34

   A.    Public Employee Collective Bargaining Agreements are State Action Exempt from the Federal Antitrust Laws ....................................... 35

   B.    Federal Antitrust Law Does Not Apply to Workers' Collective Efforts To Improve their Terms and Conditions of Employment ............ 37

   C.    Federal Antitrust Law Does Not Apply to Collective Efforts To Influence or Petition Public Officials .................................................. 39

   D.    Martin Lacks Antitrust Standing ............................................................ 40

CONCLUSION ............................................................................................................ 42

1

# <u>TABLE OF AUTHORITIES</u>

2

3

**Federal Court Cases**

4

*Abood v. Detroit Board of Education*,
    431 U.S. 209 (1977)............................................................................1, 11

5

6

*Agostini v. Felton*,
    521 U.S. 203 (1997)...............................................................................16

7

8

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
    486 U.S. 492 (1988)...........................................................................40, 41

9

10

*Am. Ad Mgmt., Inc. v. General Tel. Co. of Cal.*,
    190 F.3d 1051 (9th Cir. 1999) ...............................................................41

11

12

*Apex Hosiery Co. v. Leader*,
    310 U.S. 469 (1940)...............................................................................38

13

14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................5, 20

15

16

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990)...........................................................................41, 42

17

18

*Augustine v. United States*,
    704 F.2d 1074 (9th Cir. 1983) ................................................................5

19

*Bain v. CTA*,
    156 F.Supp.3d 1142 (C.D. Cal. 2015) ....................................................9

20

21

*Bain v. CTA*,
    891 F.3d 1206 (9th Cir. 2018) .............................................................5, 21

22

23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................5, 20

24

25

*Bierman v. Dayton*,
    900 F.3d 570 (8th Cir. 2018) .............................................................33, 34

26

27

*Board of Regents of Univ. of Wis. System v. Southworth*,
    529 U.S. 217 (2000)...............................................................................11

28

*Bodine Produce, Inc. v. U.F.W. Organizing Comm.*,
    494 F.2d 541 (9th Cir. 1974) ..........................................................37, 38, 39

*Brady v. United States*,
   397 U.S. 742 (1970)............................................................................10

*Buckley v. Valeo*,
   424 U.S. 1 (1976)............................................................................9, 25

*C & C Prods., Inc. v. Messick*,
   700 F.2d 635 (11th Cir. 1983) ..........................................................24

*Chicago Teachers Union, Local No. 1 v. Hudson*,
   475 U. S. 292 (1986)..........................................................................11

*City of Columbia v. Omni Outdoor Advert., Inc.*,
   499 U.S. 365 (1991)......................................................................35, 40

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983)...............................................................................4

*Clement v. City of Glendale*,
   518 F.3d 1090 (9th Cir. 2008) ..........................................................13

*Coltec v. Hobgood*,
   280 F.3d 262 (3d Cir. 2002) ........................................................10, 11

*D'Agostino v. Baker*,
   812 F.3d 240 (1st Cir. 2016), *cert. denied*, 136 S.Ct. 2473(2016)........................33

*Danielson v. Inslee*,
   No. 3:18-CV-05206-RJB, 2018 WL 3917937
   (W.D. Wash. Aug. 16, 2018) ...................................................7, 12, 17

*Davis v. United States*,
   564 U.S. 229 (2011)............................................................................16

*Dingle v. Stevenson*,
   840 F.3d 171 (4th Cir. 2016) ............................................................10

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) .............................................................5

*Ellis v. Railway Clerks*,
   466 U. S. 435 (1984)...........................................................................11

*Excelsior Underwear Inc.*,
   156 NLRB 1236 (1966) ......................................................................27

*Farrell v. IAFF*,
  781 F.Supp.647, 649 (N.D. Cal. 1992)...................................................................9

*Franklin v. Fox*,
  No. C 97-2443 CRB, 2001 WL 114438 (N.D. Cal. Jan. 22, 2001) ...............13, 14

*Friedrichs v. Cal. Teachers Ass'n*,
  2013 WL 9825479 (C.D. Cal. Dec. 5, 2013)..........................................................14

*Friedrichs v. Cal. Teachers Ass'n*,
  2014 WL 10076847 (9th Cir. Nov. 18, 2014), *aff'd by an equally divided
  Court*, 136 S.Ct. 1083 (2016) ........................................................................14, 16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*,
  528 U.S. 167 (2000)................................................................................................4

*Gator.com Corp. v. L.L. Bean, Inc.*,
  398 F.3d 1125 (9th Cir. 2005) ...............................................................................4

*Glickman v. Wileman Brothers & Elliott, Inc.*,
  521 U.S. 457 (1997)..............................................................................................11

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)..............................................................................................12

*Harris v. Quinn*,
  134 S.Ct. 2618 (2014).....................................................................................15, 16

*Hill v. Serv. Employees Int'l Union*,
  850 F.3d 861 (7th Cir. 2017), *cert. denied*, 138 S.Ct. 446 (2017) .......................33

*Hoffman v. Inslee*,
  No. C14-200-MJP, 2016 WL 6126016 (W.D. Wash. Oct. 20, 2016) ..................15

*ILWU v. ICTSI Or., Inc.*,
  863 F.3d 1178 (9th Cir. 2017) .......................................................................39, 40

*Janus v. AFSCME Council 31*,
  138 S.Ct. 2448 (June 27, 2018) ...................................................................1, 8, 34

*Jarvis v. Cuomo*,
  660 F. App'x 72 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 1204 (2017) ...........15, 33

*John Doe No. 1 v. Reed*,
  561 U.S. 186 (2010)........................................................................................26, 28

MEMORANDUM ISO UNION DEFENDANTS' MOTION TO DISMISS FAC, #2:18-cv-08999-JLS-DFM

*John Doe No. 1 v. Reed*,
    697 F.3d 1235 (9th Cir. 2012) ............................................................................24

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
    20 F.3d 1250 (3d Cir. 1994) ..............................................................................13

*Keller v. State Bar of Cal.*,
    496 U.S. 1 (1990)................................................................................................11

*Kidwell v. Transp. Commc'ns Int'l Union*,
    946 F.2d 283 (4th Cir. 1991) ...............................................................................9

*Lamberty v. Conn. State Police Union*,
    2018 WL 5115559 (D. Conn. Oct. 19, 2018)........................................................7

*Lehnert v. Ferris Faculty Assn.*,
    500 U. S. 507 (1991)..........................................................................................11

*Lemon v. Kurtzman*,
    411 U.S. 192 (1973)......................................................................................15, 16

*Locke v. Karass*,
    555 U. S. 207 (2009).........................................................................................11

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982)...............................................................................12, 13, 14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...........................................................................................24

*Masters v. Screen Actors Guild*,
    2004 WL 3203950 (C.D. Cal. Dec. 8, 2004)........................................................9

*Mayfield v. United States*,
    599 F.3d 964 (9th Cir. 2010) ...............................................................................4

*Mentele v. Inslee*,
    No. C15-5134-RBL, 2016 WL 3017713 (W.D. Wash. May 26, 2016)...............33

*Mid-Am. Reg'l Bargaining Ass'n v. Will Cty. Carpenters Dist. Council*,
    675 F.2d 881 (7th Cir. 1982) .............................................................................39

*Minnesota State Board for Community Colleges v. Knight*,
    465 U.S. 271 (1984)....................................................................................32, 33

*Munns v. Clinton*,
    822 F.Supp.2d 1048 (E.D. Cal. 2011 ...................................................................4

*NAACP v. Alabama*,
    357 U.S. 449 (1958)...................................................................................25

*Native Vill. of Noatak v. Blatchford*,
    38 F.3d 1505 (9th Cir. 1994) .......................................................................4

*NLRB v. CJC Holdings, Inc.*,
    97 F.3d 114 (5th Cir. 1996) ........................................................................29

*NLRB v. J. P. Stevens & Co.*,
    409 F.2d 1207 (4th Cir. 1969) ....................................................................27

*Parker v. Brown*,
    317 U.S. 341 (1943)...................................................................................35

*Payne v. Tennessee*,
    501 U.S. 808 (1991)...................................................................................17

*Perry Educ. Ass'n v. Perry Local Educ. Ass'n*,
    460 U.S. 37 (1983)....................................................................................28

*Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n*,
    81 F.3d 858 (9th Cir. 1996) ........................................................................40

*Pinsky v. Duncan*,
    79 F.3d 306 (2d Cir. 1996) ...................................................................13, 15

*S. Motor Carriers Rate Conference, Inc. v. United States*,
    471 U.S. 48 (1985)....................................................................................35

*Sato v. Orange Cty. Dep't of Educ..*,
    861 F.3d 923 (2017) ..................................................................................37

*Smith v. Univ. of Wash.*,
    233 F.3d 1188 (9th Cir. 2000) ......................................................................4

*Steffel v. Thompson*,
    415 U.S. 452 (1974)....................................................................................4

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)................................................................................4, 24

*Timbisha Shoshone Tribe v. Dep't of Interior*,
    824 F.3d 807 (9th Cir. 2016) ............................................................... 4

*Town of Hallie v. City of Eau Claire*,
    471 U.S. 34 (1985) ...........................................................35, 37, 38

*United Farm Workers of Am. v. Ariz. Agric. Emp't Relations Bd.*,
    669 F.2d 1249 (9th Cir. 1982) ............................................................ 35

*United Mine Workers of Am. v. Pennington*,
    381 U.S. 657 (1965) .....................................................................40, 41

*United States v. Hutcheson*,
    312 U.S. 219 (1941) .......................................................................... 37

*United States v. Johnson*,
    67 F.3d 200 (9th Cir. 1995) .............................................................. 11

*Vector Research, Inc. v. Howard & Howard Attorneys, P.C.*,
    76 F.3d 692 (6th Cir. 1996) .............................................................. 13

*Warth v. Seldin*,
    422 U.S. 490 (1975) .....................................................................24, 25

*Winner v. Rauner*,
    No. 15 CV 7213, 2016 WL 7374258 (N.D. Ill. Dec. 20, 2016) ........................... 15

*Wyatt v. Cole*,
    504 U.S. 158 (1992) ...........................................................12, 13, 14, 15

*Wyatt v. Cole*,
    994 F.2d 1113 (5th Cir. 1993), *cert. denied*, 510 U.S. 977 (1993) ................ 13, 16

*Yohn v. CTA*,
    No. 8:17-cv-00202-JLS-DFM, Doc. 198 (C.D. Cal. Sept. 28, 2018) ............ 7, 8, 14

**State Court Cases**

*American Academy of Pediatrics v. Lungren*,
    16 Cal.4th 307 (1997) ...................................................................... 30

*Country Eggs, Inc. v. Kawamura*,
    129 Cal.App.4th 589 (2005) .............................................................. 11

*County of Los Angeles v. Los Angeles County Employee Relations Committee*,
    56 Cal. 4th 905 (2013) ..................................................................22, 23, 32

*Cumero v. PERB*,
   49 Cal.3d 575 (1989) ................................................................................. 14, 18

*El Rancho Unified School Dist. v. Nat'l Educ. Ass'n*,
   33 Cal.3d 946 (1983) ........................................................................................ 18

*Leek v. Washington Unified School Dist.*,
   124 Cal.App.3d 43 (1981) ................................................................................. 18

*Link v. Antioch Unified School Dist.*,
   142 Cal.App.3d 765 (1983) ............................................................................... 18

*San Jose Teachers Ass'n v. Superior Court*,
   38 Cal.3d 839 (1985) ........................................................................................ 18

**Federal Statutory Authorities**

15 U.S.C. §17 ......................................................................................................... 37

42 U.S.C. § 1983 ............................................................................................. *passim*

29 U.S.C. §151 et seq .......................................................................................... 38

**State Statutory Authorities**

Cal. Educ. Code §45060(e) ................................................................................... 30

Cal. Gov't Code
   §1159 ........................................................................................................... 17, 19
   §3540 ........................................................................................................... 17, 36
   §3541.5 ........................................................................................................ 17, 19
   §3543 .............................................................................................. 18, 29, 31, 36
   §3543.1 .............................................................................................................. 36
   §3543.3 .............................................................................................................. 36
   §3543.5 .............................................................................................................. 36
   §3543.6 .............................................................................................................. 36
   §3543.7 .............................................................................................................. 36
   §§3544-3544.7 ................................................................................................... 36
   §3546 ........................................................................................................... 12, 18
   §3546.3 .............................................................................................................. 20
   §3558 ...................................................................................................... *passim*
   §6254.3 ......................................................................................................... 22, 25
   §45060 ............................................................................................................... 30

**Federal Rules and Regulations**

Fed. R. Civ. P. 12(b)(1) ........................................................................4, 5, 21

Fed. R. Civ. P. 12(b)(6) ...............................................................................5

**Additional Authorities**

Senate Bill 846, 1 (September 14, 2018)....................................................19

Restatement (Second) of Contracts § 175 ................................................10

## **INTRODUCTION**

Plaintiffs Michael Martin, Lori Bonner, Philip David Glick, and Kimberly Jolie allege that they are public school teachers and former union members who resigned their union memberships sometime after June 2018. Their First Amended Complaint asserts a grab bag of claims against Defendants Riverside City Teachers Association, California Teachers Association ("CTA"), and National Education Association ("NEA") (collectively, the "Union Defendants"), as well as Plaintiff Martin's school employer and state officials. As demonstrated below, all of Plaintiffs' claims against the Union Defendants should be dismissed, except for the portion of Claim 2 that seeks retrospective relief.

## **BACKGROUND**

This case was originally filed on July 14, 2018, in the wake of the Supreme Court's decision in *Janus v. AFSCME Council 31*, 138 S.Ct. 2448 (June 27, 2018), which overturned the Court's 40-year-old precedent in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977) and held that public employers cannot require non-members to pay fair-share fees to a union representative as a condition of employment.

The original Complaint alleged that Plaintiff Martin is a public school teacher employed by Defendant Riverside Unified School District, that Martin previously was a member of the Riverside City Teachers Association, CTA, and NEA, and that he resigned his membership in July 2018, shortly after the *Janus* decision. Complaint, Doc. 1, at ¶¶11-13; *see also* First Amended Complaint ("FAC"), Doc. 47, at ¶¶15-16, 20, *id.* Exh. 12. The First Amended Complaint adds Plaintiffs Bonner, Glick, and Jolie, who likewise allege that they are public school teachers and were former members of CTA and NEA who similarly resigned their union memberships after *Janus*.[1]  FAC ¶¶16, 20.

---

[1] According to the Union Defendants' records, Plaintiff Glick actually retired from teaching in October 2016, and his membership was likewise terminated at that time.

1    The First Amended Complaint asserts what are styled as six claims:

2    In Claim 1, Plaintiffs allege that California law violates the First Amendment

3    by providing that teachers who choose not to become union members can be

4    required to pay fair-share fees to support union representation.  FAC ¶¶15-26.  Some

5    Plaintiffs (which ones are not identified) allege that they would not have joined the

6    union or would have resigned their memberships earlier if not for the requirement to

7    pay fair-share fees as a non-member, while others (which ones are not identified)

8    allege that "they were led to believe that union membership was a mandatory

9    condition of their employment" and "were never informed of their constitutional

10    right to quit the union."  *Id.* ¶¶17-19.  Plaintiffs seek declaratory and injunctive relief

11    to prevent the future enforcement of California statutes authorizing fair-share fees,

12    as well as retrospective monetary relief.  *Id* ¶¶24-26, 84.

13    In Claim 2, Plaintiffs allege that their First Amendment rights were violated

14    because, while they were union members, members had to opt-out of making a $20

15    annual payment to CTA if they did not wish to make that payment.  FAC ¶¶27-42.

16    Plaintiffs seek declaratory and injunctive relief to prevent CTA from using an opt-

17    out system to collect funds from its members, as well as retrospective monetary

18    relief.  *Id.* ¶¶39-42, 85.

19    In Claim 3, Plaintiffs ask the Court to declare unconstitutional and enjoin the

20    enforcement of California Government Code §3558, a state law that provides for

21    public school employers to share with the unions that represent their employees the

22    contact information of bargaining unit employees whom the unions must represent,

23    unless the employee has requested that his or her contact information not be shared.

24    FAC ¶¶43-56, 86.

25

26

27    _____

28    Declaration of Alec Williams in Support of Union Defendants' Motion to Dismiss
      ("Williams Decl."), ¶10.

In Claim 4, Plaintiff Martin (and only Plaintiff Martin) alleges that his First Amendment rights were violated because California law provides that a union member must send a letter to the union, rather than to the employer, if the union member wishes to terminate membership dues deductions.  FAC ¶¶57-64.  Plaintiff Martin seeks prospective declaratory and injunctive relief against the enforcement of the law as well as damages.  *Id.* ¶¶64, 87.

In Claim 5,[2] Plaintiff Martin (and only Plaintiff Martin) alleges that collective bargaining through an exclusive representative violates the First Amendment.  FAC ¶¶65-74.  Martin seeks prospective declaratory and injunctive relief.  *Id.* ¶¶74, 88.

Finally, in Claim 6, Plaintiff Martin (and only Plaintiff Martin) alleges that the collective bargaining agreements between California school districts and CTA affiliates violate the federal antitrust laws because they provide for "uniform salaries for teachers regardless of subject matter," set salary scales based on seniority, and do not give credit for seniority when teachers change jobs.  FAC ¶¶75-81.  Martin alleges that as an "upwardly mobile" and "highly sought-after STEM teacher[]," FAC ¶77, he would get better employment terms if he negotiated on his own.  Martin seeks declaratory, injunctive, and retrospective monetary relief for the alleged antitrust violation.  *Id.* ¶¶81, 89.

## LEGAL STANDARDS

**1.**  A federal court must dismiss a claim for prospective relief for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when there is no live

---

[2] Although the amended Complaint styles this claim as "Claim 6," that appears to be a typographical error, as the amended Complaint contains only six total claims and this claim appears fifth in order.  *See* FAC at pp. 26, 36-45.  Plaintiffs' sixth claim is also referred to as both "Claim 6" and "Claim 7" in the amended Complaint, apparently also in error.  *See id.* at pp. 32, 44-45.  For the sake of clarity, the Union Defendants will refer to the claim that appears fifth in order (the challenge to exclusive representation) as "Claim 5," and the claim that appears sixth in order (the antitrust claim) as "Claim 6."

controversy remaining between the parties as to that particular claim, including where intervening changes in the law or the facts on the ground have "removed the basis or need for relief." *Smith v. Univ. of Wash.*, 233 F.3d 1188, 1195 (9th Cir. 2000); *see also Timbisha Shoshone Tribe v. Dep't of Interior*, 824 F.3d 807, 812 (9th Cir. 2016); *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128-29 (9th Cir. 2005) (en banc) (citing *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)).

For a case or controversy to exist under Article III, it is not enough that "the plaintiff continues to believe that some unlawful conduct occurred" at some point in the past; if there is no longer any actual, extant controversy based on *current* facts "about the plaintiffs' particular legal rights," a claim for prospective relief is moot. *Timbisha Shoshone Tribe*, 824 F.3d at 812; *see also Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994).

"A plaintiff bears the burden of establishing 'that he has standing for each type of relief sought.'" *Munns v. Clinton*, 822 F.Supp.2d 1048, 1072 (E.D. Cal. 2011 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)); *see also, e.g.*, *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 185 (2000)). "Thus, a plaintiff who has standing to seek damages for a past injury … does not necessarily have standing to seek prospective relief" in the form of an injunction or declaratory judgment. *Mayfield*, 599 F.3d at 969.  For claims seeking declaratory or injunctive relief, a plaintiff's past harm does not suffice: to have Article III standing to seek such forward-looking equitable relief, a plaintiff must also show that he faces a "real or immediate threat ... that he will again be wronged in a similar way." *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983).

Because mootness or lack of standing deprives a federal court of subject matter jurisdiction, the Court is not limited to the facts alleged in the pleadings in considering a Rule 12(b)(1) motion.  *See, e.g.*, *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) ("In ruling on a challenge to subject matter jurisdiction,

1    the district court is ordinarily free to hear evidence regarding jurisdiction and to rule

2    on that issue prior to trial, resolving factual disputes where necessary.").

3    **2.** "To survive a motion to dismiss" under Rule 12(b)(6), the allegations of

4    the complaint, "accepted as true," must "'state a claim to relief that is plausible on its

5    face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

6    *Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads

7    factual content that allows the court to draw the reasonable inference that the

8    defendant is liable for the misconduct alleged." *Id.*

9    A motion to dismiss should be granted without leave to amend pursuant to

10    Rule 12(b)(6) "'if it appears beyond doubt that the plaintiff can prove no set of facts

11    in support of his claim which would entitle him to relief, construing the complaint in

12    the light most favorable to the plaintiff.'" *Bain v. CTA*, 891 F.3d 1206, 1211 (9th

13    Cir. 2018) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061 (9th Cir.

14    2004) (some internal quotation marks and citations omitted)).

## ARGUMENT

### I. Plaintiffs' Claim Regarding Membership Dues (Claim 1) Should Be Dismissed.

18    In their "reluctant[]" member claim (Claim 1), some Plaintiffs allege that they

19    either would not have joined the union or would have resigned their membership

20    earlier if not for the requirement that non-members pay fair-share fees, while others

21    allege that they were misled to believe that membership in the union was mandatory.

22    FAC ¶¶15-26. As part of "Claim 1," Plaintiffs seek declaratory and injunctive relief

23    to prevent the future enforcement of the California statutes that authorize fair-share

24    fees. They also seek retrospective monetary relief in the form of a partial refund of

25    their membership dues in an amount equivalent to fair-share fees that were

26    previously paid by non-members under the theory that they either became members

27    under duress or became members as a result of misrepresentation. *See id.* ¶¶24-26,

28    84. These claims are based on both §1983 and state tort law. As demonstrated

1  below, the claims for prospective relief do not present an Article III controversy and

2  the claims for retrospective relief are meritless.  "Claim 1" should therefore be

3  dismissed.

### A. Plaintiffs' Claim for Prospective Relief Against the Collection of Fair-Share Fees from Non-Members Does Not Present a Live Controversy.

7  As part of Claim 1, Plaintiffs seek declaratory and injunctive relief against the

8  enforcement of statutes and collective bargaining agreements that provide for the

9  payment of fair-share fees by bargaining unit workers who choose not to become

10  union members.  *See* FAC ¶¶26, 84.  But the Supreme Court already held in *Janus*

11  that fair-share requirements are unconstitutional, and the Union Defendants and the

12  defendant school district already fully complied with *Janus*, so these claims for

13  prospective relief do not present an Article III case or controversy.

14  On the day *Janus* was announced, June 27, 2018, Defendant CTA (which

15  accepted fair-share fees on behalf of its national affiliate NEA as well as many local

16  affiliates like Riverside City Teachers Association) wrote to all California school

17  districts with which CTA or its local affiliates have collective bargaining

18  relationships to notify them that they must "immediately cease all payroll deductions

19  of fair share fees, for all fee payers in [the applicable] bargaining unit," and stop

20  transferring such fees to CTA or its local affiliates, which, "[d]ue to the change in

21  the law," will "no longer collect fair share fees."  Declaration of Wei Pan in Support

22  of Motion to Dismiss ("Pan Decl."), Exh. A; *see also id.* ¶¶8-9.  That same day,

23  CTA also sent letters to all fair-share fee payers notifying them that they are "no

24  longer legally obligated to pay fair share fees for the union's representational

25  services," and that CTA was instructing school districts "to comply with the *Janus*

26  decision" by "immediately ceas[ing] payroll deduction of fair share fees."  *Id.* Exh.

27  B; *see also id.* ¶10.

28

1    The Union Defendants also immediately communicated with defendant
2    Riverside Unified School District and instructed the District not to collect fair-share
3    fees or transmit them to the Union Defendants. *Id.* at ¶¶14-15. In addition, the
4    Union Defendants changed their policies to ensure they would no longer submit to
5    public employers a calculated fair-share fee rate or lists of non-members, without
6    which public employers will no longer be able to deduct fair-share fees from non-
7    members. *Id.* at ¶¶11-12.

8    The Union Defendants also immediately informed defendant Riverside
9    Unified School District that provisions in the parties' memorandum of understanding
10   that provide for fair-share fees are invalid and of no legal effect given *Janus* and
11   should already have been discontinued. *Id.* at ¶14; *see also* Declaration of Daniel
12   Koen in Support of Motion to Dismiss ("Koen Decl.") at ¶¶8-9; *id.* Exh. A.
13   Defendant Riverside City Teachers Association thereafter entered into a written
14   agreement with defendant Riverside Unified School District to remove all references
15   to fair-share fees from their Memorandum of Understanding and to confirm that no
16   fair-share fees will be collected from non-members in the future because of *Janus*.
17   *Id.* at ¶10; *id.* Exh. B.

18   This Court has already concluded that similar claims by an employee of the
19   same Riverside Unified School District against the same Union Defendants for
20   prospective relief against fair-share fees must be dismissed as moot because fair-
21   share fees already permanently ended after *Janus*. *See* Order Granting Motions to
22   Dismiss, *Yohn v. CTA*, No. 8:17-cv-00202-JLS-DFM, Doc. 198 (C.D. Cal. Sept. 28,
23   2018); *see also Danielson v. Inslee*, No. 3:18-CV-05206-RJB, 2018 WL 3917937
24   (W.D. Wash. Aug. 16, 2018) (holding that a similar claim in Washington state was
25   moot); *Lamberty v. Conn. State Police Union*, 2018 WL 5115559, at *26-27 (D.
26   Conn. Oct. 19, 2018) (same regarding Connecticut claim). As this Court explained
27   in *Yohn,* "because the challenged conduct of collecting agency fees cannot be
28   reasonably expected to recur," claims for declaratory and injunctive relief

1    concerning that conduct are moot.  Order Granting Motions to Dismiss, *Yohn v.*

2    *CTA*, at 7.  The same conclusion applies here.

3           **B. Plaintiffs Are Not Entitled to Retrospective Relief for Having Paid**

4               **Union Membership Dues.**

5           As another part of Claim 1, Plaintiffs seek recovery of an amount equal to the

6    fair share fees that non-members were required to pay prior to the *Janus* decision,

7    even though Plaintiffs had chosen to become members.  FAC ¶24.  This claim is

8    meritless for multiple reasons.

9               **1.  Plaintiffs' payment of membership dues was voluntary, so**

10                  **the entire premise of Plaintiffs' claim is erroneous.**

11          Plaintiffs' refund claim proceeds from the premise that they were "compelled

12   to subsidize the union or its affiliates against their will" in violation of their First

13   Amendment rights.  FAC at p. 3, *id.* ¶¶19, 25.  That premise is wrong because

14   Plaintiffs' payment of union membership dues was entirely voluntary and was not

15   "compelled" in any manner that could trigger First Amendment concerns.  By

16   deciding to pay union dues in exchange for the full benefits of membership,

17   Plaintiffs entered into valid contracts with the Union Defendants that were fully

18   enforceable under state and federal law and that are unaffected by any subsequent

19   changes to the law, including *Janus*.  That Plaintiffs may now regret their voluntary

20   decision to join the union does not give them any legal claims.

21          The First Amendment prohibits the government from *compelling* an individual

22   to subsidize another private party's expressive activities.  *See, e.g.*, *Janus*, 138 S.Ct.

23   at 2464 (explaining that "*compelled* subsidization of private speech seriously

24   impinges on First Amendment rights") (emphasis added).  Where such subsidies are

25   paid voluntarily instead of being compelled by the government, they constitute a

26   form of expressive activity that is *protected*—not proscribed—by the First

27   Amendment.  *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 16 (1976).  Because Plaintiffs

28

1  voluntarily chose to join the union and pay union membership dues, there is no merit

2  to Plaintiffs' First Amendment challenge to the payment of such dues.

3       Some Plaintiffs (though which are not identified) assert that they would have

4  opted to not pay union membership dues if they could have paid no fees to the

5  unions (as they can now do after *Janus*) instead of facing the alternative of paying

6  fair share fees. *See* FAC ¶¶17-24.  But the mere fact that Plaintiffs' post-*Janus*

7  options differ from those they faced under pre-*Janus* California law and Supreme

8  Court precedent falls far short of making their decision to join the unions non-

9  voluntary, government-compelled, or the product of government coercion or duress.

10 Indeed, that California law required Plaintiffs to choose between paying union

11 membership dues and fair share fees does not make Plaintiffs' choice to pay union

12 dues the result of state action, as it must be for Plaintiffs to state a §1983 First

13 Amendment claim.  *See generally Bain v. CTA*, 156 F.Supp.3d 1142 (C.D. Cal.

14 2015).  It certainly does not provide any basis for allowing Plaintiffs to demand a

15 refund of the dues that they paid in exchange for benefits received from the unions.

16      There was nothing coercive in presenting employees with an option to pay

17 more for union membership in order to receive added benefits.  "Where the

18 employee has a choice of union membership and the employee chooses to join, the

19 union membership money is not coerced.  The employee is a union member

20 voluntarily."  *Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 292-93 (4th

21 Cir. 1991) (addressing voluntary union members' limited First Amendment rights to

22 challenge union expenditures); *cf. Masters v. Screen Actors Guild*, 2004 WL

23 3203950, *16 n.6 (C.D. Cal. Dec. 8, 2004) (citing *Kidwell* to find that "a union is

24 entitled to require, as a condition of membership, that members pay a fee that covers

25 the costs of both the union's non-representational and representational activities");

26 *Farrell v. IAFF*, 781 F.Supp.647, 649 (N.D. Cal. 1992) (following *Kidwell* and

27 rejecting First Amendment claims brought by public sector union members).

28

1      A person seeking to void a contract on grounds of duress must prove multiple

2  elements, the most basic of which is that the person was induced to sign the contract

3  by an improper *threat*—*i.e.*, a communication that instills fear in the person that,

4  unless she signs the demanded contract, she will face some consequence worse than

5  the status quo existing in the absence of the contract.  *See* RESTATEMENT (SECOND)

6  OF CONTRACTS § 175(1).  Here, Plaintiffs did not face any consequence worse than

7  the status quo; indeed, the fair-share fees they would have been required to pay to the

8  unions were substantially lower than the membership dues they chose to pay, as

9  Plaintiffs themselves admit.  FAC ¶19.

10      While Plaintiffs premise their claims on the legal change brought about by the

11  *Janus* decision, parties cannot rescind their contractual commitments—let alone seek

12  to claw back money paid in exchange for already-provided contractual benefits—

13  based on later changes in the law.  In *Coltec Industries, Inc. v. Hobgood*, 280 F.3d

14  262 (3d Cir. 2002), for example, a coal company attempted to rescind a contract in

15  which it had agreed to make certain regular payments to a benefit fund in exchange

16  for the fund's agreement to accept a cap on the total amount of the payments.  *Id*. at

17  267-68.  The company claimed it entered into the agreement because of the existence

18  of a statutory provision that the Supreme Court later held unconstitutional.  *Id*.  The

19  Third Circuit rejected the company's attempt to rescind the agreement, reasoning

20  "that a change in law does not, alone, justify such relief, even when the change is

21  based on constitutional principles."  *Id*. at 277.

22      Indeed, even in cases involving plea agreements—contracts that waive an

23  individual's fundamental right to personal liberty—courts steadfastly apply the

24  principle that subsequent judicial decisions do not allow rescission.  In *Brady v.*

25  *United States*, 397 U.S. 742 (1970), for example, the Supreme Court held that a

26  criminal defendant could not rescind his plea agreement even though he claimed he

27  entered the plea under the pressure induced by a death penalty statute later found by

28  the Supreme Court to have been unconstitutional.  *Id.* at 756-57; *see also, e.g.*,

*Dingle v. Stevenson*, 840 F.3d 171, 175-76 (4th Cir. 2016) ("Contracts in general are a bet on the future. . . . Some element of pressure exists in every deal, as the tradeoff between present certainty and future uncertainty is emblematic of the process of plea bargaining."); *United States v. Johnson*, 67 F.3d 200, 201-02 (9th Cir. 1995) (defendant's waiver encompassed appeals arising out of a law enacted in the period between his plea and sentencing even though "the sentencing law changed in an unexpected way" at that time).

Accordingly, Plaintiffs cannot retroactively rescind their voluntary membership agreements simply because they allegedly would have made a different decision if *Janus* had been decided earlier. *See, e.g.*, *Country Eggs, Inc. v. Kawamura*, 129 Cal.App.4th 589, 595 (2005) (courts "have not looked favorably on the entreaties of parties trying to escape" their obligations based on subsequent legal developments that lead them to regret their original decisions) (citing *Coltec*, 280 F.3d at 274).

### 2. The Unions are not liable for retrospective relief under §1983 because they acted in good faith in collecting fair-share fees.

Plaintiffs' §1983 claim against the Union Defendants for retrospective relief, FAC ¶¶33 & 35(g), is also barred because the Union Defendants acted in good faith reliance on state statute and controlling U.S. Supreme Court precedent in collecting pre-*Janus* fair-share fees from non-members. Before *Janus*, the Supreme Court had squarely held, and re-affirmed many times, that requiring public employees to pay fair-share fees as a condition of public employment was constitutional.[3] It is well-established that when private parties act in good-faith reliance on presumptively

---

[3] *Abood,* 431 U.S. at 232; *Locke v. Karass*, 555 U. S. 207, 213-14 (2009); *Lehnert v. Ferris Faculty Assn.*, 500 U. S. 507, 519 (1991); *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U. S. 292, 301-02 (1986); *Ellis v. Railway Clerks*, 466 U. S. 435, 455-57 (1984); *see also Keller v. State Bar of Cal.*, 496 U.S. 1, 9-17 (1990); *Board of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 230-32 (2000); *Glickman v. Wileman Brothers & Elliott, Inc*., 521 U.S. 457, 471-73 (1997).

valid state laws, they have a complete defense to §1983 liability.  Because the Union Defendants received pre-*Janus* fair-share fees in accordance with a California statute, FAC ¶22 (citing Cal. Gov't Code §3546), that was constitutional under then-controlling Supreme Court precedent, they are not retrospectively liable here.  *See* Order on Defendant AFSCME's Motion for Judgment on the Pleadings or Summary Judgment, *Danielson v. AFSCME Council 28*, W.D. Wash. Case No. 3:18-cv-05206-RJB, Doc. 50, at 4-7 (Nov. 28, 2018) (dismissing §1983 claims against unions for collecting pre-*Janus* fair-share fees), submitted herewith as Exhibit A to the Declaration of Scott A. Kronland in Support of Union Defendants' Motion to Dismiss First Amended Complaint ("Kronland Decl.").

> **a.**  Section 1983 provides a cause of action for the deprivation of an individual's "rights, privileges, or immunities secured by the Constitution and laws" under color of state law.  42 U.S.C. §1983.

In limited circumstances, private parties may be sued under §1983 if they act under color of state law.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).  While public officials exercising discretionary duties who face §1983 claims are entitled to "qualified immunity" from liability unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the Supreme Court has held that private parties cannot invoke "qualified immunity," *Wyatt v. Cole*, 504 U.S. 158, 168-69 (1992).

But private parties are entitled to a similar defense to monetary liability when they rely on presumptively valid state laws.  *Every* member of the *Wyatt* Court concluded that *some* defense to monetary liability, whether qualified immunity or a good faith defense, is available to private defendants.  The three dissenting Justices concluded that qualified immunity itself is available to private defendants, while the majority opinion observed that such defendants "could be entitled to an affirmative defense based on good faith."  *Id.* at 169.  The Court's acknowledgement of the

availability of a good faith defense was elaborated in separate opinions joined by a majority of the Court. *See id.* at 169 (Kennedy, J., joined by Scalia, J., concurring); *id.* at 175 (Rehnquist, C.J., joined by Souter and Thomas, JJ., dissenting); *see also Lugar*, 457 U.S. at 942 n.23 (acknowledging unfairness of imposing damages liability on private parties who "innocently make use of seemingly valid state laws").

On the basis of these opinions, the Fifth Circuit squarely held on remand "that private defendants sued on the basis of *Lugar* may be held liable for damages under §1983 only if they failed to act in good faith in invoking the unconstitutional state procedures…." *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993), *cert. denied*, 510 U.S. 977 (1993). Since *Wyatt*, this holding has been adopted by every Court of Appeals to address this issue—including the Ninth Circuit. *See Clement v. City of Glendale*, 518 F.3d 1090, 1096-97 (9th Cir. 2008) (recognizing and applying good faith defense); *Pinsky v. Duncan*, 79 F.3d 306, 311-12 (2d Cir. 1996); *Vector Research, Inc. v. Howard & Howard Attorneys, P.C.*, 76 F.3d 692, 698-99 (6th Cir. 1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1275-78 (3d Cir. 1994); *see also Franklin v. Fox*, No. C 97-2443 CRB, 2001 WL 114438, at *6 (N.D. Cal. Jan. 22, 2001) (noting "universal[]" recognition of good faith defense).

In *Clement*, a towing company that obeyed a police order to tow a car that was parked on private property with the property owner's permission was granted judgment in the car owner's §1983 suit, based on the company's adherence to governing law. *Clement*, 518 F.3d at 1093. The Ninth Circuit affirmed, reasoning that the company had done "its best to follow the law" and that its actions "appeared to be permissible under both local ordinance and state law." *Id.* at 1097.

The availability of the good faith defense in §1983 actions recognizes the inequity of holding private parties liable for damages for acting under color of state law when government officials would be immune from liability for the same conduct. *See, e.g.*, *Wyatt*, 504 U.S. at 168 ("[P]rinciples of equality and fairness may suggest … that private citizens … should have some protection from liability, as do

13

1   their government counterparts….”); *Lugar*, 457 U.S. at 942 n.23 (unfairness to

2   private parties of being held liable for “mak[ing] use of seemingly valid state laws”

3   “should be dealt with … by establishing an affirmative defense” and “[a] similar

4   concern is at least partially responsible for the availability of a good faith defense, or

5   qualified immunity, to state officials”).  As Judge Charles Breyer has explained, it

6   would be “manifestly unfair to hold that the state actor – whose participation is

7   required for there to be a section 1983 violation at all – is entitled to qualified

8   immunity, but hold the private actor … liable for the plaintiff's damages.”  *Franklin*,

9   2001 WL 114438, at *5.  As these courts also recognize, the good faith defense is

10  fully consistent with the purpose of §1983 “to deter state actors from using the badge

11  of their authority to deprive individuals of their federally guaranteed rights,” *Wyatt*,

12  504 U.S. at 161, because if a state actor's conduct is consistent with then-binding

13  precedent, the threat of §1983 liability “will not deter [that] conduct,” *Franklin*, 2001

14  WL 114438, at *6.

15          **b.**  Plaintiffs' §1983 claim seeks the refund of their membership dues in

16  an amount equivalent to fair-share fees collected from non-members before *Janus*

17  issued, at a time when California statues and controlling U.S. Supreme Court

18  precedent expressly allowed the collection of such fees.  This Court, the Ninth

19  Circuit, and the California Supreme Court had all ruled that California's statutory

20  fair-share fee system was constitutional.  *See Friedrichs v. Cal. Teachers Ass'n*,

21  2014 WL 10076847 (9th Cir. Nov. 18, 2014), *aff'd by an equally divided Court*, 136

22  S.Ct. 1083 (2016); *Friedrichs v. Cal. Teachers Ass'n*, 2013 WL 9825479 (C.D. Cal.

23  Dec. 5, 2013); *Cumero v. PERB*, 49 Cal.3d 575, 581-82 (1989).  As this Court

24  recognized, “prior to *Janus*,” the Union Defendants “were merely following the 40-

25  year-precedent of *Abood*” and its progeny, and the state laws premised on those

26  precedents that were in effect at the time the fair-share fees were collected.  *Yohn*,

27  Doc. No. 198, at 6.

28

1    The Union Defendants were entitled, when entering into contractual

2    agreements with public employers that provided for fair-share fees, to rely upon

3    California state law and U.S. Supreme Court precedent that was then binding on

4    public employers, the Union Defendants, Plaintiffs, and every lower court, and that

5    was repeatedly reaffirmed in the decades after its issuance.  *See* n.3, *supra*.  As the

6    Supreme Court has emphasized, "state officials and those with whom they deal are

7    entitled to rely on a presumptively valid state statute, enacted in good faith and by no

8    means plainly unlawful."  *Lemon v. Kurtzman*, 411 U.S. 192, 209 (1973); *see also*

9    *Wyatt*, 504 U.S. at 174 (Kennedy, J., concurring) ("[A] private individual's reliance

10   on a statute, prior to a judicial determination of unconstitutionality, is considered

11   reasonable as a matter of law."); *Pinsky*, 79 F.3d at 313 ("[I]t is objectively

12   reasonable to act on the basis of a statute not yet held invalid.").

13   There is nothing unique about the fair-share fee context of this lawsuit that

14   would prevent application of the good faith defense.  To the contrary, after *Harris v.*

15   *Quinn*, 134 S.Ct. 2618 (2014), held that states could not require Medicaid-funded

16   homecare providers to pay fair-share fees as a condition of employment, every court

17   to consider whether homecare unions had to return fees collected pre-*Harris* applied

18   the good faith defense to hold that the unions that received those fees prior to *Harris*

19   were not subject to retrospective liability under §1983.  *See Jarvis v. Cuomo*, 660 F.

20   App'x 72, 75-76 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 1204 (2017) (holding that

21   union that had relied on state law in collecting fair-share fees from homecare

22   workers before *Harris* was not liable to pay refunds under §1983); *Winner v. Rauner*,

23   No. 15 CV 7213, 2016 WL 7374258, at *5-6 (N.D. Ill. Dec. 20, 2016) (same);

24   *Hoffman v. Inslee*, No. C14-200-MJP, 2016 WL 6126016, at *4 (W.D. Wash. Oct.

25   20, 2016) (same).

26   The good faith defense to liability applies regardless of whether the Union

27   Defendants could have "predicted" the result in *Janus*—although they could not.

28   Courts have applied the good faith defense when private parties relied upon state

1    statutes that had not been invalidated by the courts, even where (unlike here) there

2    was no governing precedent holding the law constitutional, and, indeed, even where

3    the governing case law was not clear and even suggested that the legal authority

4    relied on by the defendants was in jeopardy.  *See, e.g.*, *Wyatt*, 994 F.2d at 1120-21

5    (good faith defense applied where defendant relied upon Mississippi replevin statute

6    that had not yet been invalidated but that had been placed in "legal jeopardy" by

7    prior Circuit opinion invalidating similar Georgia statute); *cf. Davis v. United States*,

8    564 U.S. 229, 241 (2011) (Alito, J.) (declining to apply the exclusionary rule to

9    evidence obtained through a search consistent with then-binding Circuit precedent

10   because police were entitled to rely on that precedent, even though its reasoning had

11   been questioned, and because the Court would not "penalize the officer for the

12   appellate judges' error") (alterations and citation omitted).

13          The Supreme Court has emphatically rejected the notion that anyone is

14   entitled to, much less *required to*, anticipate the overruling of its precedents, even

15   when those precedents have been criticized in later cases.  Rather, lower courts *must*

16   "follow the case which directly controls, leaving to [the Supreme] Court the

17   prerogative of overruling its own decisions."  *Agostini v. Felton*, 521 U.S. 203, 237

18   (1997).  While some Justices recently had expressed "misgivings about *Abood*,"

19   *Janus*, 138 S.Ct. at 2484, the Court had *twice declined* to overrule *Abood* in the four

20   years before the *Janus* decision, so *Abood* unquestionably remained the governing

21   law of the land, *see Harris*, 134 S.Ct. at 2638; *Friedrichs*, 136 S.Ct. 1083.

22          Exposing private parties to potentially catastrophic liability for relying on a

23   state law that is indisputably valid under then-binding Supreme Court precedent

24   solely because some Justices have expressed doubt about the precedent's reasoning

25   would be both unworkable and highly corrosive to the rule of law.  "[S]tatutory or

26   even judge-made rules of law are hard facts on which people must rely in making

27   decisions and in shaping their conduct."  *Lemon*, 411 U.S. at 199.  If the good faith

28   defense depended upon the presence or absence of dicta criticizing a particular prior

1   precedent, however, private parties would no longer be able to rely upon the Court's

2   decisions, and would instead be required to predict the way that the Justices

3   (including sometimes, as in *Janus*, a new Justice who has never before opined on the

4   issue) might vote in a future case, thereby undermining the entire system of

5   precedent that forms the basis of our legal system.  *See, e.g.*, *Payne v. Tennessee*,

6   501 U.S. 808, 827 (1991) (explaining that this system "promotes the evenhanded,

7   predictable, and consistent development of legal principles, fosters reliance on

8   judicial decisions, and contributes to the actual and perceived integrity of the judicial

9   process").

10       In a very recent decision, another district court recently rejected a §1983 claim

11   against a union for having collected fair-share fees in reliance on state law pre-*Janus*.

12   *See* Kronland Decl., Exh. A, at 4-7 (Nov. 28, 2018 Order on Motion for Judgment on

13   the Pleadings or Summary Judgment, *Danielson v. Inslee*, W.D. Wash. Case No.

14   3:18-cv-05206-RJB, Doc. 50).  That decision is well-reasoned and should be

15   followed.

16           **3.        Plaintiffs' state law refund claim is meritless.**

17       In addition to asserting a federal §1983 claim, Plaintiffs also seek in Claim 1

18   to hold the Union Defendants retrospectively liable under state common law because

19   the Union Defendants collected fair-share fees from non-members prior to *Janus*

20   (which Plaintiff contend wrongfully induced them to become union members).  *See*

21   FAC ¶83.  But any common law claims regarding fair-share fees are preempted by

22   California's Educational Employment Relations Act, Cal. Gov't Code §§3540-

23   3549.3, and any claims under EERA are subject to the exclusive jurisdiction of the

24   Public Employment Relations Board ("PERB") and must therefore be dismissed.  In

25   any event, such claims are barred by California Government Code §1159.

26       **a.**  EERA governs labor relations for public school district employees.  PERB

27   has *exclusive jurisdiction* to determine whether the conduct of an employer or an

28   employee organization violates EERA and, if so, what the remedy shall be.  Cal.

1    Gov't Code §3541.5.  In order to protect PERB's exclusive jurisdiction, the

2    California Supreme Court has held that EERA broadly preempts state tort claims that

3    allege conduct that is even "arguably protected or prohibited under EERA." *El*

4    *Rancho Unified School Dist. v. Nat'l Educ. Ass'n*, 33 Cal.3d 946, 960 (1983).  The

5    Court explained that "what matters is whether the underlying conduct on which the

6    suit is based – however described in the complaint – *may* fall within PERB's

7    exclusive jurisdiction."  *Id*. at 954 n.13 (emphasis added).

8         The alleged conduct of collecting fair-share fees pre-*Janus* was at least

9    arguably protected by EERA because EERA expressly authorizes the collection of

10   fair-share fees.  Cal. Gov't Code §§3543(a), 3546(a); *see also Cumero*, 49 Cal.3d at

11   587 ("EERA … contains provisions expressly … allowing … for compulsory

12   nonmember service fees").  California courts have held that challenges to fair-share

13   fees are subject to PERB's exclusive jurisdiction.  *See Leek v. Washington Unified*

14   *School Dist.*, 124 Cal.App.3d 43, 51-54 (1981); *Link v. Antioch Unified School Dist.*,

15   142 Cal.App.3d 765, 767-69 (1983).  And the California Supreme Court has

16   expressly agreed with the reasoning of those decisions.  *See San Jose Teachers Ass'n*

17   *v. Superior Court*, 38 Cal.3d 839, 863 (1985) ("We agree with the Court of Appeal's

18   view in those cases.").

19        Moreover, if Plaintiffs wish to argue that these specific EERA provisions

20   should be treated as retroactively void in light of *Janus*, then the alleged conduct of

21   collecting fair-share fees pre-*Janus* would at least arguably have been prohibited

22   under EERA.  Indeed, the California Supreme Court explained in *Cumero* that PERB

23   had interpreted the general provisions of EERA to preclude the collection of fair-

24   share fees, except as "that general provision is modified … by the more particular

25   provisions of [§§3440.1(i)(2) and 3546], authorizing organizational security

26   arrangements."  *Cumero*, 49 Cal.3d at 583-84.  The "[i]nterpretation of the EERA

27   falls squarely within PERB's legislatively designated field of expertise," *id.* at 586

28

1   (citation, internal quotation marks omitted), so how to interpret and apply EERA

2   after *Janus* is initially and exclusively a question for PERB.

3     By adopting EERA, the California Legislature completely displaced any

4   common law claims related to the collection of fair-share fees, and any state law

5   claims regarding the collection of such fees must be presented to PERB, because

6   "[t]he initial determination as to whether … charges or unfair practices are justified,

7   and, if so, what remedy is necessary to effectuate the purposes of [EERA], shall be a

8   matter within the exclusive jurisdiction of [PERB]."  Cal. Gov't Code §3541.5.  The

9   Court must therefore dismiss Plaintiffs' state law refund claims as preempted.

10     **b.**  Even if this Court, rather than PERB, were the proper forum for addressing

11   Plaintiffs' assertions of state law liability for the prior collection of fair-share fees

12   (which it is not for the reasons previously explained), the California Legislature's

13   recent adoption of Government Code §1159 confirms that there is no such liability

14   under state law.  Section 1 of Senate Bill 846, which was signed by the Governor on

15   September 14, 2018 and immediately effective, provides in relevant part:

16     Section 1159 is added to the Government Code, to read:

17      1159. (a) The Controller, a public employer, an employee

18     organization, or any of their employees or agents, shall not be liable
       for, and shall have a complete defense to, any claims or actions under

19     the law of this state for requiring, deducting, receiving, or retaining

20     agency or fair share fees from public employees, and current or
       former public employees shall not have standing to pursue these

21     claims or actions, if the fees were permitted at the time under the laws

22     of this state then in force and paid, through payroll deduction or
       otherwise, prior to June 27, 2018.

23

24      (b) This section shall apply to claims and actions pending on its
       effective date, as well as to claims and actions filed on or after that

25     date.

26     Under this provision, the Union Defendants cannot be held liable under state

27   law for the collection of pre-*Janus* fair-share fees.  They have a "complete defense"

28   to Plaintiffs' state law claims for refunds, regardless of the cause of action asserted;

1    and Plaintiffs lack "standing to pursue the[ir] claims …."  Cal. Gov't Code §1159(a).

2    As such, all of Plaintiffs' state law claims are precluded by SB 846 as a matter of

3    law.  And this result makes perfect sense, because the California Legislature had

4    previously expressly authorized fair-share fees by statute, thereby displacing any

5    "law of this state," including the common law theories on which Plaintiffs now

6    mistakenly seek to proceed.

7                 **C. Plaintiffs Fail to Allege Sufficient Facts to State a**

8                 **Misrepresentation Claim.**

9         Finally, also as part of Claim 1, Plaintiffs allege in the alternative that "they

10   were led to believe that union membership was a mandatory condition of their

11   employment" and "were never informed of their constitutional right to quit the

12   union," FAC ¶¶17-19.   This claim likewise must be dismissed under Rule 12(b)(6).

13   It is well established that a plaintiff must "plead[] factual content that allows the

14   court to draw the reasonable inference that the defendant is liable for the misconduct

15   alleged" by the plaintiff in question.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550

16   U.S. at 570).  "A pleading that offers 'labels and conclusions' or 'a formulaic

17   recitation of the elements of a cause of action will not do.' Nor does a complaint

18   suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*

19   (quoting *Twombly*, 550 U.S. at 555, 557).

20        Here, Plaintiffs not only fail to identify *which* of them was allegedly misled as

21   to their constitutional rights, but also do not identify *who* allegedly so misled them or

22   *how*, without which it is impossible to know whether the Union Defendants' actions

23   are even implicated.  These "naked assertion[s]" are therefore insufficient to state a

24   claim for relief against the Union Defendants.[4]

25   _____

26   [4] To the extent Plaintiffs seek any relief (prospective or retrospective) in Claim 1
     concerning California Government Code §3546.3 (*see* FAC ¶¶12, 13), pursuant to

27   which, prior to *Janus*, public school employees with a religious objection to
     contributing money to a union were instead required in some cases to make a

28   charitable contribution to another organization in lieu of paying fair-share fees,

## II.     Plaintiffs' Challenge to CTA's Voluntary Contribution (Claim 2) Should Be Dismissed Insofar as Plaintiffs Seek Prospective Relief.

In Claim 2, Plaintiffs seek both retrospective monetary relief and prospective declaratory and injunctive relief to prevent the enforcement of a $20 annual contribution made by CTA members, which members can opt out of paying. FAC ¶¶27-42, 85.  Plaintiffs' claims for prospective relief styled as Claim 2 should be dismissed for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1).

Because the $20 annual contribution, by Plaintiffs' own allegations, applies only to current union members, Plaintiffs are no longer subject to that contribution. They resigned their own union memberships in or around July 2018.  FAC ¶20.  The Riverside City Teachers Association already has processed Martin's resignation and confirmed with the Riverside Unified School District that it will not deduct from any pay due Martin any payments to the Union Defendants.  Scott Decl., ¶¶5-7; Williams Decl. ¶7.  Likewise, Plaintiffs Bonner and Jolie's resignations were processed when their requests to resign were received, and no further deductions have been or will be made from any pay due Bonner or Jolie.  Williams Decl., ¶¶8-9.  And because Plaintiff Glick retired at the end of October 2016, the unions automatically cancelled his membership as a result of his retirement that same month.  *Id.* ¶10.

Because Plaintiffs are no longer union members and do not allege any concrete plan to become union members ever again, they face no risk of being subject in the future to the policy they challenge in Claim 2, and, accordingly lack standing to seek declaratory or injunctive relief against that policy (or, alternatively,

---

Plaintiffs have no standing to pursue such relief.  Plaintiffs do not allege they had or have any religious objection to contributing money to a union.  And even if Plaintiffs had properly alleged standing, which they have not, any claim for prospective relief concerning §3546.3 is moot after *Janus*, for religious objectors are no longer required to make charitable contributions in lieu of fair-share fees, which have ceased.  *See* Declaration of Sheri Scott in Support of Motion to Dismiss ("Scott Decl.") ¶8.

their claims for prospective relief against the policies are moot).  Under similar circumstances, the Ninth Circuit held in *Bain* that a plaintiff's promotion to principal (and therefore out of the bargaining unit of teachers) deprived the court of jurisdiction to hear her claims for prospective relief against statutes and policies that applied only to bargaining unit workers.  891 F.3d at 1214.

To the extent Plaintiffs seek retrospective relief for injuries allegedly suffered while they were union members because of the policy that is the subject of Claim 2, the Union Defendants do not seek in this motion to dismiss that claim.  The Union Defendants will demonstrate at a later date that that the $20 annual contribution was simply an obligation of union membership that CTA members choose to make optional, rather than mandatory; that Plaintiffs voluntarily consented to the opt-out process for collecting these payments by becoming members; and, accordingly, that Plaintiffs' claim for retrospective relief is meritless.

**III.    Plaintiffs' Challenges to California Government Code §3558 (Claim 3) Should Be Dismissed.**

In Claim 3, Plaintiffs raise multiple challenges to California Government Code §3558, which provides that public school districts must provide unions that serve as exclusive representatives of bargaining units with

> the name, job title, department, work location, work, home, and personal cellular telephone numbers, personal email addresses on file with the employer, and home address of any newly hired employee within 30 days of the date of hire or by the first pay period of the month following hire, and ... with a list of that information for all employees in the bargaining unit at least every 120 days unless more frequent or more detailed lists are required by an agreement with [the union].

Cal. Gov't Code §3558.  As Plaintiffs acknowledge, *see* FAC ¶¶43-44, the same statute also provides that an employee may opt out of having such information shared with the union, *see* Cal. Gov't Code §3558; *see also id.* §6254.3(c).

Section 3558 codifies the California Supreme Court's decision in *County of Los Angeles v. L.A. County Employee Relations Committee*, 56 Cal. 4th 905, 931-32

1   (2013), which held that the disclosure of public employees' contact information to a

2   union does not violate their privacy rights under the state constitution.  The Court

3   explained that, "[b]ecause the union's duty [of fair representation] extends to all

4   employees in the bargaining unit, regardless of union membership, the union must

5   have the means of communicating with all employees." *Id.* at 931.  Likewise,

6   "[d]irect communication between unions and all bargaining unit employees is

7   essential to ensure that nonmembers' opinions are heard" on collective bargaining

8   matters, "even if these employees do not have a vote," as required by the duty of fair

9   representation.  *Id.*  For those reasons, the "balancing of interests generally favors

10  disclosure" of employees' contact information to the unions that represent them,

11  unless an individual employee objects and opts out of the disclosure.  *Id.* at 932.

12      Plaintiffs allege that requiring employers to share bargaining unit members'

13  contact information unless the employees opt out violates the First Amendment, or

14  alternatively violates state tort law and their state or federal constitutional rights to

15  privacy.  None of these claims have any merit.

16      **A. Plaintiffs Lack Standing to Challenge §3558.**

17      As a threshold matter, Plaintiffs' complaint does not establish their standing to

18  challenge §3558.  They allege they were union members until recently, so their

19  unions already have their contact information.  Moreover, they do not allege that

20  they previously opted-out of having their contact information shared with their union

21  representatives by their public employers, so it would already have been shared

22  pursuant to §3558.  Plaintiffs also do not allege that have kept their personal contact

23  information secret from the public.  Nor do they allege that they have plans to

24  change their personal contact information in the future and keep it confidential, or

25  that they would do so if not for §3558.  That being so, there is no relief this Court

26  could order that would redress, or prevent, the injury they allege.

27      A plaintiff seeking to invoke the jurisdiction of the federal courts must

28  establish his standing to sue, by convincing the court that he "has 'alleged such a

1   personal stake in the outcome of the controversy' as to warrant *his* invocation of

2   federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)

3   (emphasis in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)).  In

4   particular, a plaintiff seeking injunctive relief—as do Plaintiffs here, *see* FAC ¶¶56,

5   86—"must show that he is under threat of suffering 'injury in fact' that is concrete

6   and particularized; the threat must be actual and imminent, not conjectural or

7   hypothetical; it must be fairly traceable to the challenged action of the defendant; and

8   it must be likely that a favorable judicial decision will prevent or redress the injury."

9   *Summers*, 555 U.,S. at 493.  It is not sufficient for this purpose that a plaintiff show

10  that someone else is threatened with such a redressable injury: "[T]he 'injury in fact'

11  test requires more than an injury to a cognizable interest. It requires that *the party*

12  *seeking review* be himself among the injured." *Lujan v. Defenders of Wildlife*, 504

13  U.S. 555, 563 (1992) (emphasis added).

14          The Ninth Circuit's decision in *John Doe No. 1 v. Reed*, forecloses Plaintiffs'

15  claims.  In *Doe*, the plaintiffs sought to enjoin the state from releasing the names of

16  people who signed petitions supporting a Washington referendum.  697 F.3d 1235,

17  1237 (9th Cir. 2012).  The Ninth Circuit dismissed the plaintiffs' appeal as moot

18  because the petitions, which included the names of the individuals who had signed,

19  were already widely available on the internet.  *Id.* at 1238-39.  As the court held,

20  "once a fact is widely available to the public, a court cannot grant any 'effective

21  relief' to a person seeking to keep that fact a secret." *Id.* at 1240; *accord C & C*

22  *Prods., Inc. v. Messick*, 700 F.2d 635, 636-37 (11th Cir. 1983) (dismissing appeal

23  seeking protective order over discovery materials that had already been released to a

24  third party, because "no order from this court [could] undo that situation").

25  Similarly, here, Plaintiffs have not alleged facts to show that there is any relief the

26

27

28

1  Court could order here that would have any practical significance to *them,* so they

2  lack standing to challenge §3558.[5]

3      In any event, as discussed below, even if the Court had Article III jurisdiction,

4  Plaintiffs' challenges to §3558 are meritless.

5              **B. Section 3558 Does Not Violate the First Amendment.**

6      Three aspects of California's statutory scheme doom Plaintiffs' contention that

7  the statute violates their First Amendment rights.  First, the disclosure of contact

8  information Plaintiffs challenge reveals nothing about Plaintiffs' associations or

9  beliefs.  Second, even if Plaintiffs' First Amendment rights were implicated by the

10  disclosure of their contact information, Plaintiffs could easily avoid that concern by

11  simply opting out pursuant to §6254.3(c).  Third, even if §3558 otherwise implicated

12  the First Amendment, which it does not, the requirement that school districts share

13  this contact information with the union representing their employees is substantially

14  related to an important government interest.

15      **1.**  Section 3558 does not infringe on Plaintiffs' First Amendment rights—and

16  is not subject to exacting scrutiny—because the content-neutral contact information

17  that is disclosed under the statute (unless Plaintiffs opt out) reveals nothing about

18  their associations and beliefs.  In every compelled disclosure case in which the

19  Supreme Court has applied exacting scrutiny, what was disclosed by the challenged

20  state action was information that linked an individual to a cause, an association, or a

21  political activity, or identified the individual's political beliefs.  *See, e.g.*, *NAACP v.*

22  *Alabama*, 357 U.S. 449, 462-63 (1958) (NAACP membership list disclosed support

23  for that organization); *Buckley*, 424 U.S. at 66 (disclosed financial transactions with

24  a candidate or party would "reveal much about a person's activities, associations,

25

26  _____

27  [5] That Plaintiffs' claims were brought as a putative class action does not change this analysis.  Article III requires plaintiffs to establish that they personally have a justiciable claim, so that their lack of standing precludes them from seeking relief

28  on behalf of the putative class. *See Warth v. Seldin*, 422 U.S. 490, 502 (1975)

1    and beliefs") (internal quotation marks omitted); *John Doe No. 1 v. Reed*, 561 U.S.

2    186, 194-98 (2010) (individual's signature on petition would disclose his views on

3    statute concerning gay rights).  That is not the case here. Plaintiffs' home addresses

4    and phone numbers disclose nothing about their associations, political activities, or

5    viewpoints—such as whether the Plaintiffs support or oppose union representation.

6    To put it simply, the mere disclosure of information that typically can be found in a

7    telephone directory does not implicate the First Amendment.

8         Plaintiffs nevertheless argue that disclosure of their contact information would

9    "chill[]" the exercise of their First Amendment rights.  FAC at p.5, *id.* at ¶47. But

10   governmental bodies frequently disclose such contact information—such as, for

11   example, when a municipality discloses a recorded deed—and the mere fact that

12   private parties might combine it with other information in their possession to

13   facilitate their own expressive activities has never been found to trigger exacting

14   First Amendment scrutiny.  That is for good reason: the government could hardly

15   transact its ordinary business if it were required to conduct an exacting scrutiny

16   analysis and determine whether some group might feel "chilled" every time it made

17   information available to the public.

18        In any event, Plaintiffs have not made any non-conclusory or relevant factual

19   allegations to support their claims that §3558 has an "adverse" effect on their

20   willingness to engage in anti-union speech.  Nowhere does the complaint identify

21   any way in which Plaintiffs, or even third parties opposed to unions, behave

22   differently because of §3558.  The complaint contains no allegations that the Union

23   Defendants or any other party used this information to retaliate or otherwise harm the

24   employees whose information they received.  FAC ¶¶ 28-34.  Rather, the complaint

25   generically alleges that labor unions have a "long and sordid history of bullying

26   tactics," and alludes to incidents that allegedly occurred outside California and

27   involved organizations and individuals who are not the Union Defendants to suggest

28

1  that the Union Defendants here might engage in similar perfidy in the future.  *Id.*
2  ¶¶47-49.

3        These types of speculative arguments about the mere possibility of future
4  harm have been rejected repeatedly as applied to the private sector, where the
5  National Labor Relations Board, with court approval, has long required an employer
6  to provide a union with contact information for the employees that it represents.  *See,*
7  *e.g.*, *NLRB v. J. P. Stevens & Co.*, 409 F.2d 1207, 1209 (4th Cir. 1969) (agreeing
8  with NLRB that unions were "unlikely" to misuse nonmembers' contact information
9  given the union's interest in winning over those employees and rejecting the specter
10 of misuse as a "mere possibility" insufficient to outweigh the public interest in
11 union-employee communication).  Indeed, under longstanding NLRB precedent,
12 even before a union election, the labor organization seeking to represent employees
13 is provided with a list of all employees and their contract information, precisely so
14 that the union may contact the employees to discuss the union election. *See Excelsior*
15 *Underwear Inc.*, 156 NLRB 1236 (1966).  There is no presumption that a union
16 would misuse that information even during what can be a contentious representation
17 election.

18       **2.**  Not only do Plaintiffs fail to allege they have any actual, reasonable fear of
19 retaliation by the Unions through use of their contact information, but such an
20 allegation still would be insufficient to establish a First Amendment problem.  The
21 statute itself provides that a bargaining unit worker can simply opt out of having his
22 or her contact information shared with the exclusive representative.  Plaintiffs do not
23 allege that there is any practical barrier to making such a request.

24       **3.**  Finally, even assuming the content-neutral disclosures required by §3558
25 implicated the First Amendment, the statute would survive First Amendment
26 scrutiny because the requirement that public employers forward bargaining unit
27 contact information to the exclusive representative is substantially related to the

28

1  important government interest of promoting efficient labor relations in school

2  districts.

3          Under the exacting scrutiny standard used by the Supreme Court in compelled

4  disclosure cases, a compelled disclosure is permitted when there is a "substantial

5  relation" between that disclosure requirement and a government interest strong

6  enough to "reflect the seriousness of the actual burden on First Amendment rights."

7  *See John Doe*, 561 U.S. at 196 (internal quotation marks omitted).  While the

8  exacting scrutiny standard requires a more readily apparent connection between the

9  government's means and its ends than mere rational basis review, it is not the same

10  as *strict* scrutiny (*i.e.*, that a statute be the least restrictive means of accomplishing

11  the government's interest).  Indeed, in *John Doe* itself, the Court examined the

12  relationship between the disclosure requirement and the government's interest

13  without considering whether the requirement was the least restrictive means through

14  which the government could accomplish its aim; in doing so, the Court specifically

15  rejected Justice Thomas's assessment of the relationship between the requirement

16  and the interest, which was based on a search for the "least restrictive means" under

17  a strict scrutiny regime. 561 U.S. at 199 n.2, 233-34. A statute thus does not need to

18  be narrowly tailored to survive exacting scrutiny.

19          Applying the proper test for exacting scrutiny, it is apparent that the

20  government's interest in promoting efficient labor relations for public employees is

21  substantially related to the statutory requirement that school districts share their

22  employees' contact information with the union that is their exclusive representative.

23  There can be no question about the importance of the government's interest in

24  ensuring efficient labor relations.  *See Perry Educ. Ass'n v. Perry Local Educ. Ass'n*,

25  460 U.S. 37, 50 (1983).  And the disclosure requirements of §3558 are substantially

26  related to that governmental interest.  California, like nearly every other state and the

27  federal government, seeks to promote that interest by authorizing the employees in a

28  bargaining unit to choose by majority action an exclusive union representative,

1   which is then required by law to represent equally all employees in the unit, whether

2   union members or not.  Cal. Gov't Code §3543(a).  Unions need to communicate

3   with the people they represent if they are going to carry out their function as the

4   exclusive representative of the school district's employees. Indeed, access to

5   employee contact information is "fundamental to the entire expanse of a union's

6   relationship with the employees," permitting the union to "perform its broad range of

7   statutory duties in a truly representative fashion and in harmony with the employees'

8   desires and interests."  *NLRB v. CJC Holdings, Inc.*, 97 F.3d 114, 117 (5th Cir. 1996)

9   (internal quotation marks omitted).  And the need to communicate extends to

10   employees who are not physically present in the workplace, including teachers like

11   Plaintiffs, who do not work a 12-month year and, crucially, to employees who might

12   be on leave or who are no longer working for the employer because of discharge or

13   resignation but who might have pending grievances against the employer.

14        Accordingly, there is a substantial relationship between the government

15   interest in orderly and efficient labor relations and the means through which the

16   government has elected to accomplish that purpose: providing the union that

17   employees have chosen to serve as their exclusive representative with contact

18   information for the employees that it must fairly represent.  That is all that is

19   required under an exacting scrutiny analysis.

20        **C. Section 3558 Does Not Violate Plaintiffs' Privacy Rights.**

21        Plaintiffs also allege in Claim 3 that any union that, pursuant to §3558, "seeks

22   and acquires an employee's home address, home phone number, personal cell-phone

23   number, or personal e-mail address from a public employer is liable in tort for an

24   invasion of privacy if the employee did not clearly and affirmatively consent to this

25   disclosure."  FAC ¶54.   But that allegation makes no sense because §3558 is a state

26   statute and, therefore, unions that receive information pursuant to state law are not

27   engaged in tortious conduct.

28

1    Nor can Plaintiffs' assert a viable claim for violation of the State Constitution.

2    As previously discussed (*see supra* at 22-23), §3558 codifies the California Supreme

3    Court's ruling in *County of Los Angeles*, which held that it does *not* violate the state

4    constitutional right to privacy for a public employer to disclose the contact

5    information of bargaining unit members to the union, as long as individual

6    employees may opt-out of the information sharing.   Accordingly, Plaintiffs'

7    argument that §3558 violates their California Constitutional right to privacy is

8    foreclosed by *County of Los Angeles*.

9    Plaintiffs also have no viable claim for violation of federal constitutional

10   privacy rights because "the scope and application of the state constitutional right of

11   privacy is broader and more protective of privacy than the federal constitutional right

12   of privacy as interpreted by the federal courts."  *Am. Acad. of Pediatrics v. Lungren*,

13   16 Cal.4th 307, 326 (1997).

### IV.  Martin's Challenge to California Government Code §45060 (Claim 4) Should Be Dismissed For Lack of Standing.

16   Martin alleges in Claim 4 that California Government Code §45060, added by

17   SB 866, violates his First Amendment rights for two reasons: (1) the statute requires

18   that union members direct their requests to cancel membership dues deductions to

19   the union, rather than to their public employers, FAC ¶¶58, 60-61, and (2) the statute

20   provides for such requests to be in writing, *id.* ¶62.  Martin seeks declaratory and

21   injunctive relief pursuant to 42 U.S.C. §1983, as well as retrospective monetary

22   relief.  *Id.* ¶¶64, 87.[6]

23

---

24   [6] Education Code §45060(e) provides that public school employers "shall honor the

25   terms of the employee's written authorization for payroll deductions. Employee

26   requests to cancel or change authorizations for payroll deductions for employee

27   organizations shall be directed to the employee organization rather than to the [public employer]. The employee organization shall be responsible for processing these requests. The [public employer] shall rely on information provided by the employee organization regarding whether deductions for an employee organization

28   were properly canceled or changed, and the employee organization shall indemnify

1    Martin lacks standing to raise this claim.  His own request to cancel

2 membership dues deductions already was processed and his dues deductions already

3 stopped. *See* Scott Decl. ¶7.  He does not allege any concrete plans to join the union

4 again and resign again, so he has no standing to seek prospective relief.  Moreover,

5 Martin submitted his request to cancel dues deductions to his employer and to his

6 union over the summer, after payroll deductions for the academic year already had

7 ended. *Id.*  His union processed his resignation effective July 23, 2018, and informed

8 Martin's employer to cancel dues deductions before the next academic year started,

9 when dues deductions would resume, so Martin has no damages to seek, either.

10 Scott Decl. ¶7.

11    There is nothing unconstitutional about the Legislature requiring the exclusive

12 representative to be responsible for keeping track of membership dues deduction

13 authorizations.  Nor is there anything unconstitutional about requiring that requests

14 to cancel dues authorizations be made in writing.  Indeed, that is a sensible and

15 reasonable precaution to prevent disputes over whether such a request was in fact

16 made and when.  But any ruling on the merits of a challenge to the statute must await

17 a plaintiff with standing, which Martin lacks.

18   **V.    Martin's Challenge to California's System of Exclusive Representative**

19   **Collective Bargaining (Claim 5) Should Be Dismissed.**

20    California's EERA provides for a democratic system of exclusive

21 representative bargaining, in which the majority of employees in a bargaining unit

22 may, if they choose, elect a representative, and that representative becomes

23 responsible for negotiating and administering a single collective bargaining

24

25 ─────────────────

the public school employer for any claims made by the employee for deductions
26 made in reliance on that information."  Martin appears to challenge the provisions
of SB 866 that deal with the cancelation of dues deductions by other types of
27 employees but, since those provisions do not apply to Martin, he lacks standing to
28 challenge them.

─────────────────

31

1    agreement to cover the entire unit.  *See* Cal. Gov't Code §3543.  In such systems, the

2    exclusive representative, when acting in that capacity, owes a duty of fair

3    representation to the entire bargaining unit.  *See, e.g.*, *Cty. of L.A.*, 56 Cal. 4th at 931.

4    The same democratic system of collective bargaining has been used in the United

5    States for decades for public and private sector employees, including federal

6    employees.

7         Martin alleges in Claim 5 that "[f]orcing a non-union teacher to accept the

8    representation of an unwanted union—and forcing that non-union teacher to accept

9    the union-negotiated terms of employment—violates the freedom of association

10   protected by the First Amendment."  FAC ¶66.  But Plaintiff's theory was rejected

11   by the Supreme Court in *Minnesota State Board for Community Colleges v. Knight*,

12   465 U.S. 271 (1984).  In *Janus*, the Supreme Court reaffirmed that the States may

13   continue to use their long-established exclusive representative collective bargaining

14   systems for public employees.

15        In *Knight*, a group of Minnesota college instructors asserted—like Plaintiff

16   Martin does here— that the exclusive representation provisions of that state's public

17   employee labor relations act violated the First Amendment speech and associational

18   rights of employees who did not wish to associate with the union that a majority had

19   chosen as their bargaining unit's exclusive representative.  465 U.S. at 273, 278-79.

20   The Court held that exclusive representation does not infringe the First Amendment

21   speech or associational rights of non-member employees.  *Id.* at 278-80, 288.  The

22   Court explained that non-members had no constitutional right "as members of the

23   public, as government employees, or as instructors in an institution of higher

24   education" to "force the government to listen to their views."  *Id.* at 283.  The

25   government, therefore, was "free to consult or not to consult whomever it pleases."

26   *Id.* at 285

27        *Knight* went on to consider whether Minnesota's public employee labor

28   relations act violated those First Amendment rights that non-members could properly

1   assert— namely, the right to speak and the right to "associate or not to associate."

2   465 U.S. at 288.  The Court concluded that Minnesota's law "in no way restrained

3   appellees' freedom to speak on any education-related issue or their freedom to

4   associate or not to associate with whom they please, including the exclusive

5   representative."  *Id.*  Non-members' speech rights were not infringed by Minnesota's

6   system of exclusive representation because, while the exclusive representative's

7   status "amplifie[d] its voice in the policymaking process," that amplification did not

8   "impair[] individual instructors' constitutional freedom to speak."  *Id.*  As the Court

9   explained, such amplification is "inherent in government's freedom to choose its

10  advisers" and "[a] person's right to speak is not infringed when government simply

11  ignores that person while listening to others."  *Id.*

12          *Knight* thus squarely considered whether exclusive representation violates the

13  speech or associational rights of individuals who are not members of the union that

14  has been designated as their exclusive representative, and held that it does not—

15  directly rejecting the theory Martin asserts here.  *See id.* at 288 ("[T]he First

16  Amendment guarantees the right both to speak and to associate.  Appellees' speech

17  and associational rights, however, have not been infringed ....."); *id.* at 290 n.12 (non-

18  members' "speech and associational freedom have been wholly unimpaired").  Every

19  court to consider this issue has concluded that *Knight* forecloses the claim that

20  exclusive representative collective bargaining violates the First Amendment.  *See*

21  *Bierman v. Dayton*, 900 F.3d 570 (8th Cir. 2018); *Hill v. Serv. Employees Int'l*

22  *Union*, 850 F.3d 861 (7th Cir. 2017), *cert. denied*, 138 S.Ct. 446 (2017); *Jarvis*, 660

23  F. App'x 72, *cert. denied*, 137 S.Ct. 1204 (2017); *D'Agostino v. Baker*, 812 F.3d 240

24  (1st Cir. 2016), *cert. denied*, 136 S.Ct. 2473 (2016) (Souter, J., sitting by

25  designation); *Mentele v. Inslee*, No. C15-5134-RBL, 2016 WL 3017713 (W.D.

26  Wash. May 26, 2016).

27          Martin relies on the Supreme Court's recent decision in *Janus*, Doc. 1 ¶39, but

28  *Janus* held only that public employees cannot be required to pay *non-member* fees to

1    an exclusive representative, not that exclusive representation itself violates the First

2    Amendment. 138 S.Ct. at 2460 (concluding that fair share fees "violate[] the free

3    speech rights of nonmembers by compelling them to subsidize private speech on

4    matters of substantial public concern").  As the Eighth Circuit recently explained,

5    *Janus* "never mentioned *Knight*, and the constitutionality of exclusive representation

6    standing alone was not at issue."  *Bierman*, 900 F.3d at 574.

7         Indeed, the majority opinion in *Janus* expressly distinguishes between

8    compelled financial support for an exclusive representative and the underlying

9    system of exclusive representation, emphasizing that exclusive representation

10   remains constitutional after *Janus*.  *Janus*, 138 S.Ct. at 2465, 2467; *see also id.* at

11   2471 n. 7 (characterizing collective bargaining as "foundation[al]" to modern law

12   even though it was unlawful at common law and making clear that "we are not in

13   any way questioning the foundations of modern labor law"); *id*. at 2485 n.27 ("States

14   can keep their labor-relations systems exactly as they are—only they cannot force

15   nonmembers to subsidize public-sector unions.").  *Janus* observes that exclusive

16   representation might not be permissible "in other contexts" but that the imposition of

17   a duty of fair representation on the exclusive representative in the collective

18   bargaining context avoids "serious constitutional questions."  *Id.* at 2469, 2478. As

19   such, both *Knight* and *Janus* require rejection of Plaintiffs' claim that the exclusive

20   representation model of collective bargaining violates the First Amendment.

21   **VI.    Martin's Federal Antitrust Claim (Claim 6) Should Be Dismissed.**

22        Martin alleges in Claim 6 that the collective bargaining agreements between

23   California school districts and CTA affiliates violate the federal antitrust laws

24   because he allegedly could get better terms if he negotiated individually.  But

25   Congress did not intend the federal antitrust laws to preclude the States from using

26   exclusive representative collective bargaining systems to set employment terms for

27   public employees.  Rather, for both public sector employees and private sector

28   employees not covered by federal labor relations statutes, Congress intended to leave

1  the States "free to legislate as they see fit, and [to] apply their own views of proper

2  public policy to the collective bargaining process." *United Farm Workers of Am. v.*

3  *Ariz. Agric. Emp't Relations Bd.*, 669 F.2d 1249, 1257 (9th Cir. 1982).  Martin's

4  antitrust claim is not viable for multiple reasons.

### A. Public Employee Collective Bargaining Agreements are State Action Exempt from the Federal Antitrust Laws.

7          As an initial (and dispositive) matter, the federal antitrust laws do not "restrain

8  a state or its officers or agents from activities directed by its legislature."  *Parker v.*

9  *Brown*, 317 U.S. 341, 350-51 (1943).  *Parker* explained that, "[i]n a dual system of

10  government in which, under the Constitution, states are sovereign, save only as

11  Congress may constitutionally subtract from their authority, an unexpressed purpose

12  to nullify a state's control over its officers and agents is not lightly to be attributed to

13  Congress."  *Id.* at 351; *see also S. Motor Carriers Rate Conf., Inc. v. United States*,

14  471 U.S. 48, 55 (1985) ("the Sherman Act was not intended to prohibit States from

15  imposing restraints on competition"); *City of Columbia v. Omni Outdoor Advert.,*

16  *Inc.*, 499 U.S. 365, 370 (1991) ("the Sherman Act d[oes] not apply to

17  anticompetitive restraints imposed by the States 'as an act of government'" (quoting

18  *Parker*, 317 U.S. at 352)).  Accordingly, when public entities act "pursuant to state

19  policy to displace competition with regulation," the federal antitrust laws do not

20  apply.  *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 39 (1985) (citation

21  omitted).

22          The collective bargaining agreements that Martin challenges as a violation of

23  federal antitrust law result from a democratic collective bargaining system mandated

24  by California law.  EERA gives public school employees the right "to select one

25  employee organization as the exclusive representative of the employees in an

26  appropriate unit."  Cal. Gov't Code §3540.

27          Where an exclusive representative has been recognized pursuant to EERA, the

28  representative and the public employer have a statutory "duty to meet and negotiate

in good faith" over "wages, hours of employment, and other terms and conditions of employment." *Id.* §§3543.7, 3543.2(a)(1); *see also id.* §§3543.5(c), 3543.6(c) (both public school employers and unions have duty to engage in good-faith collective bargaining).  Once an exclusive representative has been recognized, EERA *prohibits* the public employer from negotiating directly with represented employees.  *See id.* §3543(a) .

Accordingly, through EERA, the California Legislature has crafted a detailed, mandatory process for collective bargaining by public employers, public employees, and public employee representatives in California in which the employees' terms and conditions of employment are established by an agreement negotiated between the public employer and the employees' exclusive representative, rather than through individual negotiations.  *See id.* §§3543(a), 3543.1(a), 3543.3, 3543.5(c), 3543.6(c), 3543.7.  Because the prohibition on individualized negotiations that Martin challenges under federal antitrust law is mandated by the California Legislature, it constitutes state action that cannot be challenged as a federal antitrust violation.  *See Town of Hallie*, 471 U.S. at 39.[7]

---

[7] Because Martin is challenging the collective bargaining agreements themselves, which are adopted by the school districts, those agreements qualify for state action immunity without the need to show that the state is actively supervising the conduct of a private party.  The "active supervision" requirement does not apply when the government itself is the actor.  *Town of Hallie*, 471 U.S. at 46 n.10; *see also id.* at 46 ("the active state supervision requirement should not be imposed in cases in which the actor is a municipality").  In any event, California school districts are considered arms of the State, not local government entities, *see Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 934 (2017), and their active participation in negotiations and approval of the resulting agreements would satisfy the active supervision requirement even if the requirement applied.

## B. Federal Antitrust Law Does Not Apply to Workers' Collective Efforts To Improve their Terms and Conditions of Employment.

Martin's antitrust claim also fails because the conduct he challenges falls within the labor exemption to the federal antitrust laws.

For the purposes of federal antitrust law, "[t]he labor of a human being is not a commodity or article of commerce." 15 U.S.C. §17. Accordingly, where employees or their union representatives act in their own self-interest to improve the employees' terms and conditions of employment through collective action, their conduct is exempt from federal antitrust liability. *See, e.g.*, *United States v. Hutcheson*, 312 U.S. 219, 232 (1941). As the Ninth Circuit recognized more than 40 years ago, the collective bargaining that Martin challenges involves the paradigmatic form of union conduct protected by the labor exemption. *Bodine Produce, Inc. v. U.F.W. Organizing Comm.*, 494 F.2d 541, 558 (9th Cir. 1974) (rejecting interpretation of labor exemption that "would invalidate collective bargaining").

That collective bargaining prevents individual employees from negotiating on their own behalf does not give rise to federal antitrust liability. "[R]estraints on the sale of the employee's services to the employer, however, much they curtail the competition among employees, are not in themselves combinations or conspiracies in restraint of trade or commerce under the Sherman Act." *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 503 (1940).

Martin asserts in his Complaint that the labor exemption "protect[s] collective bargaining only when it occurs in the private sector" and is governed by the National Labor Relations Act, 29 U.S.C. §151 *et seq.* ("NLRA"). *See* Complaint ¶76. The Ninth Circuit, however, has held that the labor exemption applies to *all* workers, including workers whose labor relations are governed by state law rather than the NLRA. *Bodine Produce*, 494 F.2d at 548, 550. Indeed, the statutory bases for the labor exemption *predate* Congress's enactment of the NLRA and do not distinguish between workers on the basis of "the type of work in which they are engaged." *Id.*

at 548; *see also id.* ("Although it is obvious that Congress' primary area of concern was industrial labor, there is nothing to suggest that any class of labor, be it agricultural, domestic, or whatever, was intended to be excluded from the benefits of Norris-LaGuardia.  In this it was like the Clayton Act, which also made no distinction between different classes of labor.").  Martin's argument is also nonsensical, because if collective bargaining in the private sector about employment terms does not unfairly restrain trade or commerce, then certainly similar collective bargaining in the *government* sector—where employers are not in the business of making profits— does not do so.

Nor does the fact that collective bargaining results in binding contractual agreements with public employers remove that bargaining from the protection of the labor exemption.  While a union's agreement with a non-labor party may fall outside the labor exemption if the agreement is designed to harm the non-labor party's competitors or otherwise aid and abet the non-labor party's effort to suppress competition, the collective bargaining agreements negotiated and enforced by the Union Defendants at issue here simply protect the economic and workplace well-being of bargaining unit members.  There is no claim that the agreements impermissibly suppress competition in markets for goods or services *other than the bargaining unit members' own labor.*  As the Ninth Circuit made clear in *Bodine Produce*, such agreements involve the paradigmatic conduct subject to the labor exemption.  *Id.* at 551 (explaining that "[u]nions that aid and abet business combinations violate antitrust laws," whereas "[u]nion-imposed restraints which serve purposes closely related to wage, hours, and conditions of employment" are exempt from federal antitrust scrutiny); *id.* at 558 (labor exemption applied to agreement between agricultural worker union and grape purchasers because the "union and its officers were clearly pursuing their own interests rather than furthering any designs of the plaintiffs' customers to exclude the plaintiffs' product from the relevant market"); *see also Mid-Am. Reg'l Bargaining Ass'n v. Will Cty.*

1  *Carpenters Dist. Council*, 675 F.2d 881, 886-87 (7th Cir. 1982) (mere "existence of

2  a collective bargaining agreement concerning subjects of mandatory bargaining" is

3  "insufficient to remove the statutory [labor] exemption from union conduct").[8]

### C. Federal Antitrust Law Does Not Apply to Collective Efforts To Influence or Petition Public Officials.

6      Martin's federal antitrust challenge fails for yet a third reason:  The conduct

7  he challenges involves efforts by unions to influence public officials and the alleged

8  "anti-competitive" harm flows from the *outcome* of those efforts, *i.e.* the collective

9  bargaining agreements.

10      The Supreme Court has long recognized, in the *Noerr-Pennington* doctrine,

11  that efforts to convince the government to act in a manner that restricts competition

12  are protected by the First Amendment right to petition and cannot provide a basis for

13  a federal antitrust lawsuit.  *See, e.g.*, *Omni Outdoor Advert.*, 499 U.S. at 379-80

14  (federal antitrust laws do not "regulate the conduct of private individuals in seeking

15  anticompetitive action from the government").  Accordingly, efforts to influence

16  public officials, including efforts to convince them to adopt allegedly

17  anticompetitive restraints through collective bargaining, "do not violate the antitrust

18  laws even though intended to eliminate competition."  *United Mine Workers of Am.*

19

20  [8] Given that the rule of *Bodine Produce* disposes of the claim, this Court need not

21  consider whether the collective bargaining agreements here satisfy the standard that

22  the Ninth Circuit applies to determine whether agreements between unions and non-labor groups that *do* suppress competition in markets other than the market for the

23  represented employees' labor services are nonetheless exempt from federal antitrust

24  scrutiny pursuant to the "non-statutory" labor exemption.  But if the Court were to

25  reach that issue, the collective bargaining here easily satisfies that standard, because

any agreements reached through such collective bargaining "'primarily affect[] the

26  parties to the agreement[s] and no one else, … concern[] wages, hours, or

conditions of employment that are mandatory subject of collective bargaining, and

27  … [are] produced from bona fide, arm's-length collective bargaining.'"  *ILWU v.

ICTSI Or., Inc.*, 863 F.3d 1178, 1190 (9th Cir. 2017) (quoting *Phoenix Elec. Co. v.*

28  *Nat'l Elec. Contractors Ass'n*, 81 F.3d 858, 860 (9th Cir. 1996)).

1   *v. Pennington*, 381 U.S. 657, 670 (1965); *Allied Tube & Conduit Corp. v. Indian*

2   *Head, Inc.*, 486 U.S. 492, 499 (1988) ("Concerted efforts to restrain or monopolize

3   trade by petitioning government officials are protected from antitrust liability….").

4   As the Supreme Court has explained, this exemption "rests ultimately upon a

5   recognition that the antitrust laws, tailored as they are for the business world, are not

6   at all appropriate for application in the political arena."  *Omni Outdoor Advert.*, 499

7   U.S. at 380 (citation omitted).  As long as the party petitioning the government is not

8   "us[ing] the governmental *process*—as opposed to the *outcome* of that process—as

9   an anticompetitive weapon," such petitioning is exempt from federal antitrust

10   liability.  *Id.* at 380 (emphasis in original).

11       The conduct challenged by Martin in his antitrust claim is fully protected

12   under the *Noerr-Pennington* doctrine. Even if a government-ratified collective

13   bargaining agreement imposes certain restraints on "competition" for public

14   employees —such as the seniority-based pay scale Martin criticizes—unions are

15   entitled to "absolute immunity from antitrust liability" for their efforts to convince

16   public officials to agree to those terms, and for the public officials' subsequent

17   decision to adopt those terms.  *Allied Tube & Conduit Corp.*, 486 U.S. at 499.

18            **D. Martin Lacks Antitrust Standing.**

19       Finally, even if the federal antitrust laws applied here (and they do not),

20   Martin's antitrust claim would have to be dismissed because he lacks antitrust

21   standing.

22       To pursue a claim under the federal antitrust laws, a plaintiff must do more

23   than allege an injury-in-fact sufficient to establish Article III standing.  The plaintiff

24   "must [also] prove the existence of an *antitrust* injury, which is to say injury of the

25   type the antitrust laws were intended to prevent and that flows from that which

26   makes defendants' acts unlawful."  *Atl. Richfield Co. v. USA Petroleum Co.*, 495

27   U.S. 328, 335 (1990) (citation omitted) (emphasis in original).

28

1    Here, Martin asserts that he was harmed because he could not negotiate his

2    own terms and conditions of employment.  But the Supreme Court has recognized

3    that in the absence of predatory pricing, the injury to a plaintiff resulting from a

4    "price-fixing" arrangement by plaintiff's competitors (here, Martin's fellow

5    teachers) is not the kind of *consumer* injury that the federal antitrust laws were

6    intended to prevent.  *See id.*  If the challenged arrangement increases the price for

7    the services provided by the plaintiff and his or her competitors, then the plaintiff is

8    not harmed.  *See Am. Ad Mgmt., Inc. v. General Tel. Co. of Cal.*, 190 F.3d 1051,

9    1056 (9th Cir. 1999) ("There can be no antitrust injury if the plaintiff stands to gain

10   from the alleged unlawful conduct.").  Conversely, if the arrangement decreases the

11   price for the plaintiff's services—which is what Martin alleges—that reduction

12   *benefits* consumers, even if it harms the plaintiff.  *Atl. Richfield Co.*, 495 U.S. at 340

13   ("Low prices benefit consumers regardless of how those prices are set, and so long

14   as they are above predatory levels, they do not threaten competition.").  As such,

15   Martin's claim that he could negotiate better terms on his own is not the type of

16   alleged injury that provides antitrust standing.

17                                   *   *   *

18   In sum, for at least the four separate reasons discussed above, Martin's federal

19   antitrust claim should be dismissed.  Martin asserts that the "teaching profession is

20   especially ill-suited for collective bargaining," FAC ¶79, but Congress did not intend

21   to take that policy decision away from the California Legislature when public school

22   teachers are involved.  The arguments above are dispositive of Martin's antitrust

23   claim.  The Union Defendants add only that if the Court were to conclude otherwise,

24   any attempt to extend federal antitrust law to public employment collective

25   bargaining would be at odds with state public sector collective bargaining laws in

26   some 40 states and would raise very serious constitutional questions about whether

27   Congress has the power to interfere with state choices over how to negotiate terms of

28   public employment.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, the Court should dismiss all of Plaintiffs' claims against the Union Defendants except for the portion of Claim 2 (which concerns the annual $20 fee) that seeks retrospective relief.

Dated:  December 5, 2018.          Respectfully submitted,

SCOTT A. KRONLAND
JEFFREY B. DEMAIN
REBECCA MORYL LEE
Altshuler Berzon LLP


By:   */s/ Scott A. Kronland*
          Scott A. Kronland

Attorneys for the Union Defendants